**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. _____6:25-cv-00035_____ |
| | ) | |
| ENTORO, LLC, Y'ALL STREET LLC, | ) | |
| and Y'ALL STREET REPORT LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## Plaintiff's Original Complaint

Plaintiff Texas Precious Metals, LLC ("***TPM***") complains against defendants Entoro, LLC ("***Entoro***"), Y'all Street LLC ("***YS-Wyoming***"), and Y'all Street Report LLC ("***YSR-Texas***") (collectively, "***Defendants***"), and respectfully shows as follows:

### *Introduction*

1.       This case arises from Defendants' unreasonable and overly broad claim of exclusive rights to the words "Y'all Street" by asserting their limited and narrowly drawn "Y'ALL STREET" trademarks as source identifiers for any good or service that touches on the financial or securities industries, and by attempting to preclude TPM from using those words as part of TPM's distinguishable brand of unrelated goods and services. There is no likelihood of confusion between the parties' respective marks. Therefore, TPM brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a declaration that TPM's "Y'ALL STREET" marks do not infringe or unfairly compete with Defendants' alleged "Y'ALL STREET" marks.

*The Parties*

2.      Plaintiff TPM is a limited liability company duly organized and existing under the laws of the State of Texas. TPM has its principal place of business at 50 CR 356, Shiner, Texas 77984 and a mailing address of 959 Hwy. 95 N, Shiner, Texas 77984.

3.      On information and belief, Defendant Entoro is a limited liability company organized under the laws of the State of Delaware. On information and belief, Entoro has its principal place of business at 333 West Loop N, Suite 333, Houston, Texas 77024.

4.      On information and belief, Defendant YS-Wyoming is a limited liability company organized under the laws of the State of Wyoming. On information and belief, YS-Wyoming has its principal place of business at 333 West Loop N, Suite 333, Houston, Texas 77024 or, alternatively, 720 N Post Oak Road, Suite 400, Houston, Texas 77024.

5.      On information and belief, Defendant YSR-Texas is a limited liability company and a wholly owned subsidiary of Entoro; however, its state of formation is currently unknown, and, as further alleged in this Complaint, YSR-Texas might be the same entity as YS-Wyoming. On information and belief, YSR-Texas has its principal place of business at 333 West Loop N, Suite 333, Houston, Texas 77024 or, alternatively, at 720 N Post Oak Road, Suite 400, Houston, Texas 77024.

*Subject Matter Jurisdiction*

6.      This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), 1338(b), 2201, and 2202 because TPM's

claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

7.     This Court also has supplemental jurisdiction over the portions of this action based on the trademark laws of the State of Texas pursuant to 28 U.S.C. § 1367(a) because that portion of TPM's claims is so related to TPM's federal question claims in this action that they form part of the same cause or controversy under Article III of the United States Constitution.

## *Personal Jurisdiction and Service of Process*

8.     For the reasons alleged further below, Defendants are subject to personal jurisdiction in Texas and this judicial district because, on information and belief, each has established minimum contacts with Texas and the exercise of jurisdiction over each does not offend traditional notions of fair play and substantial justice.

9.     On information and belief, Entoro is subject to personal jurisdiction in Texas and this judicial district because its headquarters and principal place of business are located in Texas and this judicial district; it has continuous and systematic business contacts with Texas, as it regularly conducts business within Texas; and it has purposefully availed itself of the rights and benefits of the laws of Texas. Entoro may be served with process as provided under Fed. R. Civ. P. 4(c), 4(e)(1), and 4(h)(1), as effected pursuant to Tex. R. Civ. P. 106(a) as the state law for serving a summons upon Texas residents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to Entoro a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery on one of

Entoro's officers, managing agents, or general agents (including, on information and belief, James C. Row) wherever they may be found in Texas; (2) registered or certified mail, return receipt requested, to one of Entoro's officers, managing agents, or general agents (including, on information and belief, James C. Row) at Entoro's principle place of business at 333 West Loop N, Suite 333, Houston, Texas 77024; or (3) registered or certified mail, return receipt requested, to the last known address of Entoro's registered agent and office for service of process, with such registered agent and address being Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801, as per the information currently on file with the Delaware Secretary of State.

10.    On information and belief, YS-Wyoming is subject to personal jurisdiction in Texas and this judicial district because its headquarters and principal place of business are located in Texas and this judicial district; it has continuous and systematic business contacts with Texas, as it regularly conducts business within Texas; and it has purposefully availed itself of the rights and benefits of the laws of Texas. YS-Wyoming may be served with process as provided under Fed. R. Civ. P. 4(c), 4(e)(1), and 4(h)(1), as effected pursuant to Tex. R. Civ. P. 106(a) as the state law for serving a summons upon Texas residents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to YS-Wyoming a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery on one of YS-Wyoming's officers, managing agents, or general agents (including, on information and belief, James C. Row) wherever they may be found in Texas; (2)

registered or certified mail, return receipt requested, to one of YS-Wyoming's officers, managing agents, or general agents (including, on information and belief, James C. Row) at YS-Wyoming's principle place of business at 333 West Loop N, Suite 333, Houston, Texas 77024 or, alternatively, 720 N Post Oak Road, Suite 400, Houston, Texas 77024; or (3) registered or certified mail, return receipt requested, to the last known address of YS-Wyoming's registered agent and office for service of process, with such registered agent and address being Robert Jennings, 936 Apache Street, Cheyenne, Wyoming 82009, as per the information currently on file with the Wyoming Secretary of State.

11.    On information and belief, YSR-Texas is subject to personal jurisdiction in Texas and this judicial district because its headquarters and principal place of business are located in Texas and this judicial district; it has continuous and systematic business contacts with Texas, as it regularly conducts business within Texas; and it has purposefully availed itself of the rights and benefits of the laws of Texas. YSR-Texas may be served with process as provided under Fed. R. Civ. P. 4(c), 4(e)(1), and 4(h)(1), as effected pursuant to Tex. R. Civ. P. 106(a) as the state law for serving a summons upon Texas residents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to YSR-Texas a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery on one of YSR-Texas' officers, managing agents, or general agents (including, on information and belief, James C. Row) wherever they may be found in Texas; or (2) registered or certified mail, return receipt requested, to one of YSR-Texas' officers,

managing agents, or general agents (including, on information and belief, James C.

Row) at YSR-Texas' principle place of business at 333 West Loop N, Suite 333, Houston,

Texas 77024 or, alternatively, 720 N Post Oak Road, Suite 400, Houston, Texas 77024.

### *Venue*

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1)

because, as alleged in this Complaint, all Defendants reside in this judicial district.

Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because,

as alleged in this Complaint, a substantial part of the events giving rise to TPM's claims

occurred in this judicial district.

### *Statement of Facts*

**A.      *TPM's Nationwide Reputation***

13.     TPM and its predecessor have produced, marketed, and sold precious

metal products, commemorative rounds, and bullion under its various trademarks

throughout the United States of America since at least as early as March 2011. To date,

TPM has sold more than 4.5 million units of gold and silver rounds and bars under its

trademarks. Through the end of calendar year 2024, TPM has processed more than

181,000 client transactions worth more than $3.5 billion since its inception.

14.     TPM operates a highly visited e-commerce platform,

https://texmetals.com accessible throughout the United States of America, as well as a

precious metals depository and retail location. TPM buys and sells precious metals,

commemorative rounds, and bullion for sale online, by phone, and in person. TPM

ships products to all fifty states.

15.     TPM also provides secure storage for precious metals. At present, TPM holds approximately $4.5 billion worth of precious metals in secure storage on behalf of clients located throughout the United States of America.

16.     TPM is one of the largest precious metals dealers in the United States of America, and it enjoys a hard-earned reputation and brand in the nationwide precious metals market. For example, TPM has been recognized by the United States Mint as an official bullion dealer, and its depository is IRS-approved to store precious metals for self-directed IRAs. TPM is a member of the Retirement Industry Trust Association, the Industry Council for Tangible Assets and the American Numismatic Association. In 2014, TPM was recognized as the "Number 1 Fastest Growing Aggie-Owned or Led Business in the World" by Texas A&M University. In 2015, Inc. Magazine named TPM as the 200th Fastest Growing Private Company in America. TPM's corporate partnership with shipping provider UPS is so strong that TPM has been featured by UPS in a national television commercial. TPM is rated A+ with the Better Business Bureau.

17.     Today, TPM is a well-known and distinctive brand in both domestic and international precious metals markets. When customers, investors, retailers, distributors, banks, brokerage firms, other financial institutions, depositories, and others in the precious metals market see TPM's marks on gold and silver rounds and bullion, they know and have confidence these products are genuine and backed by TPM's impeccable reputation. Federally regulated IRA custodians such as Goldstar Trust, Strata Trust, Horizon Trust, New Direction IRA, and others accept TPM bullion products as acceptable for retirement accounts.

**B.**    *The Rise of Y'all Street*

18.    The term "Y'all Street" is a play on words. It refers to the Dallas, Texas version of New York's "Wall Street"—a burgeoning financial hub that is home to a new Texas-based branch of the New York Stock Exchange (NYSE) and, separately, the soon-to-open Texas Stock Exchange (TXSE).

19.    With Y'all Street's rapid growth and popularity comes those who wish to use the term "Y'all Street" with their new good or service offerings related (or unrelated) to the financial and securities industries. TPM is one of them. Then there are those who, like Defendants, wish to prevent others from using the term and claim it for themselves when they do not have the right to do so.

**C.**    *Defendants' "Y'all Street" Marks*

20.    On information and belief, Entoro owns the following federally registered marks that use the words "Y'all Street" (collectively, "***Cited Marks***"):

a.    **U.S. Trademark Registration No. 6,755,510 ("*'510 Registration*"),**

registered on June 7, 2022, for the mark  (words & design) for "Providing **on-line** newsletters in the field of finance and securities; Providing a ***website featuring blogs and non-downloadable*** publications in the nature [of] articles and newsletters in the field of finance and securities" in Class 41 (emphasis added). The '510 Registration issued on June 7, 2022, and bears a "date of first use" and a date of first use "in commerce" of September 23, 2020. The application giving rise to the '510 Registration was filed on December 31, 2020.

b.    **U.S. Trademark Registration No. 6,755,511** ("*'511 Registration*"), registered on June 7, 2022, for the mark **Y'ALL STREET REPORT** (words) for "Providing *on-line* newsletters in the field of finance and securities; Providing a *website featuring blogs and non-downloadable* publications in the nature [of] articles and newsletters in the field of finance and securities" in Class 41 (emphasis added). The '511 Registration issued on June 7, 2022, and bears a "date of first use" and a date of first use "in commerce" of September 23, 2020. The application giving rise to the '511 Registration was filed on December 31, 2020.

21.    On information and belief, Entoro acquired its purported trademark rights in the Cited Marks from YS-Wyoming via an assignment executed on June 20, 2023 ("**2023 Assignment**"); and the 2023 Assignment was recorded with the U.S. Patent & Trademark Office ("**PTO**") that same day. A true and correct copy of the 2023 Assignment is attached to this Complaint as "*Exhibit A.*"

22.    On information and belief, Defendants do not own any Texas state registrations (or other state registrations) for the Cited Marks. In other words, Defendants' purported rights in the Cited Marks are limited to the rights described in the '510 and '511 Registrations.

**D.**    *TPM's "Y'all Street" Marks*

23.    TPM owns, or (via the federal trademark application process) has reserved its right to own, certain trademarks that include the words "Y'ALL STREET" (collectively, "**TPM Marks**"), together with the goodwill of the businesses in which the

TPM Marks are used, and that part of the goodwill of the businesses connected with the use of and symbolized by the TPM Marks.

24.     The TPM Marks are more specifically described in the following pending, valid, and subsisting federal trademark applications, and TPM is the owner of these applications:

    a.     **U.S. Trademark Application Serial No. 98/782,901 ("*'901 Application*")**, filed on October 2, 2024, for the mark **Y'ALL STREET** (words) for "Precious metals; nonmonetary coins, namely, rounds; silver bullion; gold bullion" in Class 14, "Online retail store services featuring gold, silver, other rare metals, nonmonetary coins of others, and bullion" in Class 35, and "Streaming media services, namely, streaming of video material, streaming of audio material, and streaming of multimedia material; streaming media services, namely, streaming of video material, audio material, and multimedia material on the internet, all in the format of podcasts" in Class 38.

    b.     **U.S. Trademark Application Serial No. 99/189,573 ("*'573 Application*")**, filed on May 16, 2025, for the mark **Y'ALL STREET** (words) for "Exchange-traded funds (ETFs); Exchange-traded fund (ETF) development services; Management and operation of exchange-traded funds (ETFs); Providing exchange-traded funds (ETFs), namely, structuring, issuing, creating, and offering financial securities; Establishing exchange-traded funds (ETFs) for others; Exchange-traded funds (ETFs), namely exchange-traded funds for precious metals" in Class 36.

**E.** *TPM's Use of Its "Y'all Street" Marks*

25.    In or about April 2025, TPM published its first episode of the "Y'all Street" podcast. TPM publishes its podcast in audio and video formats, and makes it available for download or streaming on Apple Podcasts, Spotify, and TPM's YallStreet.com website. The "Y'all Street" podcast is hosted by TPM's President, Tarek Saab, and features interviews and discussions about "the business side of entertainment, finance, sports, music, and the arts." (*See* https://www.yallstreet.com/browse). TPM's "Y'ALL STREET" brand of podcast services are the subject of TPM's pending '901 Application. TPM's YallStreet.com website prominently displays the logo depicted here:



26.    In or about May 2025, TPM began selling a silver round known as the "***Y'all Street Silver Round.***" TPM's "Y'ALL STREET" brand of silver rounds and other precious metals (including the Y'all Street Silver Round) are the subject of TPM's pending '901 Application. The Y'all Street Silver Round is depicted here:



TPM promotes its Y'all Street Silver Round online at

https://www.texmetals.com/p/y'all-street-silver-round, as well as in print media. An

image from TPM's online promotion of the Y'all Street Silver Round is depicted here:



27.    TPM's Y'all Street Silver Round has grown in popularity since its launch;

and TPM's plans for other precious metal goods (including silver bullion and gold

bullion) are to stamp the same or substantially similar "Y'ALL STREET" logo on those

goods as its Y'all Street Silver Round.

28.    Moreover, TPM's Y'all Street Silver Round, and other precious metal

rounds and bullion goods, have helped TPM become a household name for precious

metals in Texas and throughout the United States of America. TPM's bullion products

are distributed widely by A-Mark Precious Metals, Inc., a publicly traded precious

metals distributor that is one of the few authorized distributors of the U.S. Mint and one

of the largest precious metals distributors worldwide. TPM's bullion products also are

sold by numerous precious metals retailers such as JM Bullion, Provident Metals,

Silver.com, and many others. TPM has signed licensing agreements with many of the largest and most prominent businesses in the precious metals industry, including A-Mark, APMEX, Federated Mint, Texas Bullion Exchange, and Republic Metals.

29.     In or about April 2025, TPM launched its "Y'ALL STREET" brand of online retail store for its Y'all Street Silver Round and other products; and plans to sell other precious metal goods (including silver bullion and gold bullion). TPM's "Y'ALL STREET" brand of online retail store services are the subject of TPM's pending '901 Application. The online retail store is currently located at

https://texmetals.com/products/collections/yall-street and prominently displays the logo depicted here:



30.     TPM also is in the process of working with a third-party developer for the creation of TPM's "Y'ALL STREET" brand of exchange-traded funds ("*ETF*") services, which are the subject of its pending '573 Application. The services will be backed by gold and silver. And the services will be branded and promoted to customers using the same or substantially similar logo as depicted here:



31.     In summary, as alleged in this Complaint, TPM has expended substantial time, money, and resources to develop, maintain, and market the TPM Marks and their

associated goods, services, and goodwill. As a result of its widespread, continuous, and exclusive use of the TPM Marks to identify both their corresponding goods and services and TPM as their source, TPM's valid and fully subsisting common law rights, federal trademark application rights, and associated goodwill in and to the TPM Marks are valuable.

**F.    *Defendants' Allegations, Threats, and Demands upon TPM***

32.    TPM recently contacted Entoro's Chief Executive Officer, James C. Row, and invited him to a meeting at TPM's headquarters in Shiner, Texas to discuss a possible collaboration between TPM and Entoro. Subsequently, Mr. Row and his son traveled to TPM's headquarters on May 8, 2025, where they met in-person with Mr. Saab and TPM's Vice President of Operations, Keith Kieschnick.

33.    Over the course of the May 8 in-person meeting and subsequent conversations between Messrs. Row and Saab, in sum and substance, Mr. Row admitted to Mr. Saab that, with respect to their respective "Y'ALL STREET" marks, the parties did not directly compete and could, and should, collaborate and work together. At no time during those discussions did Mr. Row directly or indirectly suggest that TPM is infringing Entoro's purported trademark rights or ask TPM to stop using any of the TPM Marks.

34.    Despite these on-going discussions, and for reasons unknown to TPM, Entoro and its purported "wholly owned subsidiary Y'all Street Report LLC" sent a demand letter to TPM dated June 4, 2025 ("***Demand Letter***") demonstrating an abrupt

change of heart and ending the parties' discussions. A true and correct copy of Defendants' Demand Letter is attached to this Complaint as "*Exhibit B.*"[1]

35.     In their Demand Letter, Defendants allege that they own the Cited Marks; and that their purported trademark rights are broad enough to preclude TPM (and presumably anyone else) from using any mark with the words "Y'all Street" in connection with any goods or services, including those that touch upon "the fields of finance and securities," especially "any stories or interviews related to finance." (Ex. B.)

36.     Defendants make their allegations in the Demand Letter notwithstanding their more limited identification of services in the '510 and '511 Registrations covering only "*on-line* newsletters" and "a *website featuring blogs and non-downloadable publications*" in "the field of finance and securities." (*See* U.S. Tm. Reg. Nos. 6,755,510 & 6,755,511 (emphasis added)). The Demand Letter also fails to identify any marks—registered or unregistered—besides the Cited Marks, thereby further acknowledging the limited scope of Defendants' purported trademark rights at issue.

---

[1]     Based on available information, it is unclear whether the Demand Letter's identification of "Y'all Street Report LLC" (*i.e.*, YSR-Texas) was in error because TPM cannot confirm whether such a legal entity actually exists, TPM is not aware of any license or assignments involving the Cited Marks besides the 2023 Assignment, the PTO's publicly available records for the Cited Marks identify Entoro as the current registered owner of the Cited Marks, and the 2023 Assignment and the PTO's publicly available records for the Cited Marks identify YS-Wyoming—not YSR-Texas—as the only predecessor-in-interest to the Cited Marks. In other words, either YSR-Texas exists and information about its state of formation and purported interests in the Cited Marks are well-hidden, or the Demand Letter contained a typo and the intent was to reference YS-Wyoming instead of YSR-Texas. Accordingly, for purposes of this Complaint, and for all intents and purposes, Defendants are a monolith, as are their purported interests in the Cited Marks.

37.     Also in their Demand Letter, Defendants allege that TPM's "continued use of the Y'ALL STREET mark in this manner is likely to cause consumer confusion as to the source, origin and/or sponsorship of [TPM's] goods/services;" and that such use constitutes trademark infringement and unfair competition under the federal Lanham Act, 15 U.S.C. §1051 *et. seq.*, and unfair competition under state common law. (Ex. B.)

38.     Despite Defendants' allegations, the PTO has not cited Defendants' Cited Marks against TPM's pending applications for the TPM Marks, *i.e.*, the '901 and '573 Applications. Importantly, the PTO approved the '901 Application for publication in the *Trademark Official Gazette*; and the '901 Application was published therein on June 3, 2025. Nonetheless, on June 4, 2025—one day after the '901 Application's publication date and on the same date as Defendants' Demand Letter—Entoro filed a 90-day notice of extension of time to file an opposition proceeding with the Trademark Trial and Appeal Board ("***TTAB***") against TPM's '901 Application. The Demand Letter notifies TPM about the 90-day notice of extension and threatens to "proceed with the opposition [against the '901 Application] if [TPM] does not withdraw such application immediately." (Ex. B.)

39.     In their Demand Letter, Defendants make the following demands upon TPM: (1) that TPM "cease all use of the Y'ALL STREET mark, and any other marks, logos, designs, or other designations that contain the Y'ALL STREET component;" and (2) that TPM "voluntarily abandon any applications [TPM] has filed for the Y'ALL STREET mark." (Ex. B.)

40.     On information and belief, given Defendants' filing their 90-day notice of time extension with the TTAB to oppose the '901 Application and the statements in their Demand Letter, Defendants similarly will seek to oppose other TPM "Y'ALL STREET" trademark applications once those applications are published in the *Trademark Official Gazette* and, thus, their opposition periods open.

41.     Under the totality of the circumstances, it is clear that Defendants want TPM to cease any and all uses of the words "Y'all Street" as a source identifier (trademark) for any type of good or service that might in any way touch upon the financial or securities industries; Defendants have threatened to pursue claims against TPM for trademark infringement and unfair competition under federal and state laws; Defendants will make good on their threat; and Defendants have already taken steps towards making good on their threats. As a result, TPM has no choice but to bring this action for declaratory judgment.

*Causes of Action*

<u>**COUNT I**</u>
***Declaration of No Trademark Infringement or Unfair Competition***
***Under the Lanham Act or Texas State Law***

42.     TPM incorporates and re-alleges all prior paragraphs herein by reference as though fully set forth herein.

43.     TPM alleges this Count I against Defendants for a judgment declaring that the TPM Marks and TPM's use of those marks do not infringe or unfairly compete with the Cited Marks under the Lanham Act—specifically, Lanham Act §§ 32(1) or 43(a)(1)(A) (*i.e.*, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A))—or Texas state law because there is

no likelihood of confusion. Again, the TPM Marks are the subjects of the following pending, valid, and subsisting federal trademark applications:

a.    the **'901 Application** for the mark **Y'ALL STREET** (words) for "Precious metals; nonmonetary coins, namely, rounds; silver bullion; gold bullion" in Class 14, "Online retail store services featuring gold, silver, other rare metals, nonmonetary coins of others, and bullion" in Class 35, and "Streaming media services, namely, streaming of video material, streaming of audio material, and streaming of multimedia material; streaming media services, namely, streaming of video material, audio material, and multimedia material on the internet, all in the format of podcasts" in Class 38; and

b.    the **'573 Application** for the mark **Y'ALL STREET** (words) for "Exchange-traded funds (ETFs); Exchange-traded fund (ETF) development services; Management and operation of exchange-traded funds (ETFs); Providing exchange-traded funds (ETFs), namely, structuring, issuing, creating, and offering financial securities; Establishing exchange-traded funds (ETFs) for others; Exchange-traded funds (ETFs), namely exchange-traded funds for precious metals" in Class 36.

44.    Lanham Act § 32(1) (*i.e.*, 15 U.S.C. § 1114(1)) creates a federal cause of action for trademark infringement involving a registered mark. Lanham Act § 43(a)(1)(A) (*i.e.*, 15 U.S.C. § 1125(a)(1)(A)) creates a cause of action for unfair competition (really, trademark infringement) involving an unregistered mark. Texas state common law also recognizes a cause of action for unfair competition (really,

trademark infringement) involving an unregistered mark. These federal and state causes of action for trademark infringement and unfair competition share the same essential element: *i.e.*, that there is a "likelihood of confusion" between the parties' respective marks. *See, e.g., Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F. 3d 225, 236 n.8 (5th Cir. 2010) (stating with respect to federal trademark infringement and unfair competition: "Although the Lanham Act separately establishes these causes of action, '[t]he same tests apply to both trademarks and trade dress to determine whether they are protectible and whether they have been infringed, regardless of whether they are registered or unregistered.'").

45.    A "likelihood of confusion" means that confusion is not just possible, but probable. On information and belief, neither the TPM Marks nor TPM's use of those marks creates a likelihood of confusion with the Cited Marks—a likelihood of confusion in this case is improbable. Among other things, and on information and belief, the Cited Marks are not strong and have low or no marketplace standing or recognition; the "Y'all Street" zeitgeist associated with the burgeoning Dallas financial hub has attracted other providers of financial or securities services to use the term "Y'all Street," which has further weakened the strength of Defendants' already weak marks; the TPM Marks and the Cited Marks are dissimilar in appearance, sound, and connotation when viewed in their entireties and in the context in which they are used in the marketplace; the parties' respective goods and services are distinguishable, especially because the scope of Defendants' services are limited and narrowly drawn; there is no actual confusion or intent to confuse; and the relevant consumer base is sophisticated.

46.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality within the jurisdiction of this Court under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to warrant the issuance of the declaratory judgment requested in this Complaint. Defendants' allegations of trademark infringement and unfair competition are without basis because there is no likelihood of confusion between the TPM Marks or TPM's use of those marks and the Cited Marks. A judicial declaration of non-infringement is necessary and appropriate so that TPM may ascertain its right to continue using and applying for federal registration of the TPM Marks.

47.     For these reasons, TPM seeks and is entitled to a judgment declaring that the TPM Marks and TPM's use of those marks do not infringe or unfairly compete with the Cited Marks under the Lanham Act—specifically, Lanham Act §§ 32(1) or 43(a)(1)(A) (*i.e.*, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A))—or Texas state law because there is no likelihood of confusion.

48.     TPM also seeks a permanent injunction restraining and enjoining Defendants, their respective officers, agents, servants, and employees, and all those in active concert or participation with any of them from alleging, representing, or otherwise stating that the TPM Marks or TPM's use of those marks infringe or unfairly compete with the Cited Marks under the Lanham Act or Texas state law because: (1) TPM has suffered and, and will continue to suffer, an irreparable injury; (2) other remedies available at law, such as monetary damages, are inadequate to fully compensate TPM for its injuries; (3) a remedy in equity is warranted; and (4) the public

20

interest will not be disserved by the requested permanent injunctive relief. *See* 15 U.S.C. § 1116(a); 28 U.S.C. § 2022; Fed. R. Civ. P. 65(d)(2). On information and belief, Defendants will continue to allege, represent, or otherwise state to others that the TPM Marks or TPM's use of those marks infringe or unfairly compete with Defendants' purported trademark rights in the Cited Marks under the Lanham Act. Thus, the requested permanent injunctive relief is warranted.

49.     On information and belief, this case is "exceptional" within the meaning of Lanham Act § 35(a) (*i.e.,* 15 U.S.C. § 1117(a)) because, among other things, Defendants have taken unreasonable positions and made unreasonable demands concerning the TPM Marks. Thus, TPM seeks an award of its reasonable attorneys' fees for this action and any appeals thereof pursuant to applicable law. *See* 15 U.S.C. § 1117(a); 28 U.S.C. § 2022.

50.     TPM also seeks an award of its costs for this action and any appeals thereof under applicable law. *See* 15 U.S.C. § 1117(a); 28 U.S.C. § 2022; Fed. R. Civ. P. 54(d)(1).

51.     Finally, TPM seeks pre- and post-judgment interest at the highest amounts under applicable law.

### *Jury Demand*

52.     TPM demands a trial by jury trial on all issues triable to a jury pursuant to Federal Rules of Civil Procedure 38 and 39 and other applicable state and federal law.

///

///

*Prayer for Relief*

53.    For these reasons, TPM respectfully requests this Court enter judgment in favor of TPM and against Defendants on Count I of this Complaint, granting at least the following relief:

a.    a judgment declaring that the TPM Marks and TPM's use of those marks do not infringe or unfairly compete with the Cited Marks under the Lanham Act — specifically, Lanham Act §§ 32(1) or 43(a)(1)(A) (*i.e.*, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A)) — or Texas state law;

b.    a permanent injunction restraining and enjoining Defendants, their respective officers, agents, servants, and employees, and all those in active concert or participation with any of them from alleging, representing, or otherwise stating that the TPM Marks or TPM's use of those marks infringe or unfairly compete with the Cited Marks under the Lanham Act or Texas state law, *see* 15 U.S.C. § 1116, 28 U.S.C. § 2022, Fed. R. Civ. P. 65(d)(2);

c.    a judgment declaring TPM the prevailing party and this case as "exceptional" and, thus, awarding TPM its reasonable attorneys' fees and costs for this action and any appeals thereof under applicable law, 15 U.S.C. § 1117(a), 28 U.S.C. § 2022, Fed. R. Civ. P. 54;

d.    awarding TPM pre- and post-judgment interest at the highest amounts under applicable law; and

e.    awarding TPM such other and further relief, special or general, in law or equity, as this Court may deem just and equitable.

Date: June 17, 2025

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Arthur Gollwitzer III*

Arthur Gollwitzer III
*Attorney-in-Charge*
TSBN 24073336 & SDTX Fed. No. 1268313
agollwitzer@jw.com
Emilio B. Nicolas
TSBN 24058022 & SDTX Fed. No. 1151680
enicolas@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000 – Telephone
(512) 391-2002 – Facsimile

*Counsel for Plaintiff*
*Texas Precious Metals, LLC*

**Certificate of Service**

Pursuant to Local Rule 5.3, I, Arthur Gollwitzer III, an attorney of record in this matter, here certify that on June 17, 2025, I caused the following document:

**Plaintiff's Original Complaint**

to be filed with the Clerk of the United States District Court for the Southern District of Texas, using the CM/ECF system. Because Defendants' counsel of record are unknown at this time as they have not yet been served with process or appeared in this action, I also certify that Plaintiff will attempt to serve Defendants with a copy of the aforementioned document via Federal Rule of Civil Procedure 4.

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III